Good afternoon, your honors. My name is Fletcher Hamel, and I represent the Defendant Appalachian Court of Appalachia, and I'm here to discuss the case of Richard Wanke. May I please the court? Your honors, there are five issues raised in my briefs in this case. Today I was hoping to cover the first four of those issues, and I would do so in the order that they were presented in the briefs, but of course I'm happy to answer any questions the court has about any of the issues. Given the time frame, one of the things I wanted to mention first is there's an open motion by the state to cite additional authority in United States v. McDonald. Is there any objection? There is not, and I'm glad you asked that, because McDonald actually goes right to the question that I wanted to highlight in issue one of this case, and that is why this defendant's arrest triggered his constitutional right to a speedy trial when other defendants, such as the defendant in McDonald's arrest, do not. And McDonald's actually is helpful in explaining why that is. Let me ask you just this straightforward, simple question, hopefully, and you can, you know, not spend all your time on this one issue, which is the big issue, I believe. What is your stronger argument? Is it that the defendant's constitutional right to a speedy trial was violated, or that the defendant was denied due process as a result of the delay between the offense and his arrest and prosecution? Which argument is stronger, or which argument? It can't be both. Would you agree? Yes, I would agree. It can't be both. And this is a bit more difficult question to answer. Here's what it is. You have a six year gap, right, between an arrest and an indictment. Now, at some point in that six years, the prosecution was initiated, and all the time prior to the initiation of prosecution is due process time, and all the time after the prosecution is initiated is speedy trial time. Now, I believe that the defendant, the prosecution was initiated about four hours after the murder in this case, when the defendant was arrested at 6 p.m. on February 6, 2008. So you're equating the police action as triggering the prosecution? Correct. Do you have any cases that stand for that proposition, that arresting the defendant would trigger the denying? I do. And that would be, first of all, Marion v. United States, which explicitly says that the initiation of the prosecution need not await indictment information or other charging instrument, and then they go on to explain that. But it does require an arrest. The question of – but obviously there are cases such as McDonald where arrests don't trigger prosecutions. And so the question is, how do you determine that? Where do you draw the line? And if you look at McDonald and if you look at People v. Kilkowski, the Illinois appellate court case that I cited in my brief, you can see where that line is. Well, Kilkowski, there was a complaint, correct? There was a – he was actually charged with the same offense and then was sent to Missouri. They didn't do anything about that charge, so the court – I think it was the 5th District, correct? They attributed all that time to the state of Illinois because unlike in McDonald where the prosecution ended, the prosecution never stopped. At least that's what Kilkowski says, correct? Well, what's – well, one thing that's different is that in Kilkowski, that complaint was dismissed almost immediately. It was dismissed for a lack of a – But there was a formal – there was a formal charge brought. Right, but also dismissed. And so the charge was brought and dismissed and was over and nothing happened in the case. So the prosecution wasn't ongoing, but what matters to the court in Kilkowski was that the defendant, after he was arrested, was never released. There was never a point in time where he ceased to be held in custody for that offense. Because sending him to Missouri was unlawful. That's why – I mean, they determined that sending him to Missouri was unlawful. Therefore, he was only in custody still on the criminal charge in Illinois. I don't recall that part. I only recall that they found that he never – he was never released on that charge, which is what happened in this case. Because this defendant was arrested for the murder of Gregory Clark at 6 p.m. At 7 o'clock p.m., had this defendant tried to leave the police station, he would not have been able to because he was under arrest for this offense. But he's not – he's under arrest as a violation of his bail. I mean, the trial court revoked his bail. The trial court didn't issue an arrest warrant on the murder. The trial court revoked his bail upon showing a probable cause that he may have killed Mr. Clark. That's what we've gleaned from the record, isn't it? Well, the trial court revoked his bail but never released him on the murder charge, which he was arrested for before his bail was revoked. Where's the evidence that he was arrested for murder? The entire Motion to Quash arrest. I mean, that's the only possible justification. I mean, if you're taken into custody for a charge, I mean, you could be taken into custody for investigation purposes. There has to be probable cause at some point in time. And anything – if there's no probable cause, of course, Motion to Quash would be granted. But here you have an arrest, you know, taken into custody for the murder, but he's never charged with the murder. So, I mean, we're talking about arrest, you know, for basically investigation versus the initiation of a prosecution. I mean, your argument is the prosecution was initiated when the police walked up to him and said you're under arrest. And that's the whole enumeration. So one of the Barker factors is whether or not the person made a speedy trial demand. Could your client have made a speedy trial demand during that first four years or whatever? Well, he could not have filed one in court. Right. Right, because he wasn't charged with it. So, I mean, that factor is completely inapplicable here. But Barker doesn't require all four factors. No, I know. But, I mean, if you're looking at factors, I mean, that's at least something to be considered when you're talking about a prosecution being initiated and then, you know, then a delay after that. And that's one of the factors. And here there's no prosecution initiated, or at least an argument that there's no prosecution initiated because you can't file a speedy trial demand to get that prosecution that was initiated to trial faster. Well, I think Barker kind of ‑‑ I don't think Barker contemplates a situation like this where a defendant is arrested and is held in custody for six years without charge. And, you know, because this situation is so unusual and egregious, it doesn't mean that this constitutional right doesn't apply. You know, you may have a point, but isn't the analytical framework for us to review this still well settled? Isn't it a two‑step process? Well, it depends on which constitutional amendment you're evaluating. I understand your argument. You're pushing for the speedy trial analysis, correct? I am. And because in large measure because ‑‑ maybe I don't want to put words in your mouth, but because the defendant showed potential prejudice but not actual and substantial prejudice, correct? I would say the reason I'm pushing for this analysis is mostly because this analysis would require ‑‑ would have this Court evaluate the entire issue right now. Right, right. Whereas under the Fifth Amendment, the remedy would be to remand the cause for the state to ‑‑ Show reasonableness. Right. And then for a balancing test. Let me ask you this. How do you get around the language in people in the United States v. McDonnell that the speedy trial clause does not apply to the period before a defendant is indicted, arrested, or otherwise officially accused? How do you get around that? His arrest was ‑‑ the arrest was in there. That's an ‑‑ you're saying that an arrest is an official accusation? I actually believe that there's an actual ‑‑ that actual language is in Marriott, that an arrest is an official act that publicly accuses the defendant of a crime. I don't have that right here. But I understand what you're saying, that a public accusation is different than you're being taken into custody because your bail's been revoked in another separate independent offense. The offense bill had not been revoked when he was arrested. He was arrested as a probable cause that he murdered Gregory Clark. Right. No other reason. So you're saying the mere fact that he was arrested by the police has to be attributed to the state's attorney's office, the prosecuting authorities. It has to be your position, right? No, I don't believe it has to be because, I mean, under Marion, an arrest does this, and it's the release in between that would take this out of the Sixth Amendment. And that's what happens in MacDonald. The defendant in MacDonald is actually arrested and formally charged. That charge is dismissed, he's released, and he's actually discharged from the military and then years later gets charged in civilian court. And that's the difference, that break where he's out of custody. I knew we would come to that. You're trying to say that because he remained in custody, therefore, ipso facto, that time counts towards speedy trial. That is my argument. Even though he was not under a charge, he was not appearing in court, he was not being required to do any of the things necessary to defend his accusation. What Marion talks about is the public act of the arrest. It talks about the burdens placed on the defendant through the public suspicion of his commission of a crime. Marion actually, in the paragraph that I'm starting on, it's on page 320 and 321 of Marion. Actually, under Marion, you could have a speedy trial issue with somebody who's not even in custody. But what counts for this case is this defendant was publicly accused. And not only was this arrest a public accusation, but he was literally, explicitly accused in the newspaper within a week with his picture in the paper, which ended up being a big chunk of the state's evidence in this case, was witnesses seeing that picture. So the public nature of his arrest, the fact that he was never released, puts this under the Sixth Amendment. And if you apply the four-factor test, every factor is here except for, obviously, the demand for speedy trial. But six years is far greater than one, and greater than five, which Barker felt found to be extraordinary. Not only does this record not show a reason for the delay, this record affirmatively shows that there was not an investigatory reason for this delay. Everything they needed, everything they had, everything they used in the 2017 trial, they had in that first week. And in fact, not only that, but they had a grand jury that they used to preserve testimony in that month with every bit of information that they had that they used at trial, and somehow did not come out with an indictment. And then as to prejudice, while that's happening, while the state is running grand juries and interviewing witnesses and accumulating 35 instances of prior identification statements to bring in at trial, as well as grand jury testimony, which ends up coming in as substantive evidence, while that's happening, this defendant is sitting in a jail cell, unable to investigate personally and without the point of counsel, because there hadn't been a charge filed. And he's unable to build his defense during that time. And as a result, he's pleading the motion. He lost two alibi witnesses because they were – they lost a number. They were nine-year-old girls at the time of the shooting. And where was it that they saw him, allegedly? Well, his answer to discovery that he filed on the same day as that motion said that his alibi would be at 1111 Grant Street through 1113 Grant Street, which is his home. So I think you can infer from that and the motions with reference to the witnesses, the alibi witnesses, that they saw him at 1111 Grant Street. Is there anything documented? At around 2 p.m. At around 2 p.m. Around 2 p.m. Right, which would be an alibi. I mean, he – all he – the motion said they were alibi witnesses. From that, I think you can infer that they saw him around 2 p.m. because that would be around the time of the shooting. That's what the motion says. Were their statements ever memorialized or reported somewhere? Well, if they had, then he wouldn't have prejudice. That's the problem. They weren't because the defendant was unable to memorialize him. But isn't the case law pretty clear that just a failed memory is not enough to show actual and substantial prejudice with respect to the due process claim? I don't believe it's that clear. For one, there's United States v. Labasco, where two witnesses died, and the court found that that was sufficient prejudice. Now, in terms of prejudice, what is the difference between a dead witness and a witness who can't remember? There's none. It's the same. And if you look at the case law that the state cited for this proposition that it's never enough, all of it had something else in there that made it enough. All five of the state's cases, either the defendant couldn't identify the witness to begin with or couldn't tell the court how that witness would have helped him. Did the affidavits here, or the defendant's affidavits, say how he knew these two 9-year-olds? No. So why would one expect that they would even remember him, even if it were back at or around the time of the killing, if they didn't know him? Well, I mean, at this point, what we have is for some reason, he believed that they knew him. For some reason, the threshold showing it has to be made by the defendant that there was actual and substantial prejudice. And that's why the speedy trial argument is stronger, I take it, correct? The speedy trial argument is stronger because of one of four factors. But I do believe it is what it is. And I think it's more than what's in the state's cases. And I would suggest that it is enough to get to the second. In the due process context, we're not talking about letting him go. We're talking about remanding for a second-stage hearing where the state gives its reasons and then this judge applies a balancing test. I think that what he has here is enough to get there. Well, you'll have time for rebuttal, but just a couple more questions. We do know that the state's attorney changed from the time of the offense and the indictment, correct? That's true. Mr. Loebly was the state's attorney. We can assume or infer that he called the shots with regard to charging murder. And Mr. Brescato, who came in after Mr. Loebly was gone, obviously looked at the cold cases and said, We're going to indict this case. Is that unreasonable? I mean, for the sake of argument, we know that there was the posture of the office changed, the leadership in the office changed. Mr. Loebly was gone. He made the decision not to indict. But Mr. Brescato disagreed and instructed his assistants to seek an indictment? I mean, how would that be unreasonable? Because nothing changed. And because the defendant has a right, once he's arrested for an offense and is continuously held on it, to have it resolved faster than the defendants decision. Do you agree that prosecutors have almost an unfettered discretion to examine and make their own determination as to whether or not the evidence is sufficient to indict, and then present it to the grand jury to see if the grand jury agrees? Generally, they do, sir. With regard to the evidentiary issue, do you want to make a brief comment about the evidentiary concern? If I could. If I could address both of them at the same time, if I could. What I would like to say about both of them is it goes to prejudice. If you take – if you look at this case, if you take out the prior consistent statements, and you take out the exaggerations and the misstatements of evidence by the prosecutor, what you are left with is a very weak case against Mr. Wank. You have three eyewitnesses who did not identify him in court, who did not identify him in a lineup or in a photo array, who only identified him in one of the most suggestive manners you could possibly come up with, seeing his picture in the newspaper. You have a handful of other witnesses who identified a van. There's nothing special about this van. No license plate, no damage, no markings. So the evidence in this case is extremely weak. And the prior consistent statements in this case really demonstrate the prejudicial effect of prior consistent statements. There's just so many of them. And it transforms this case from a very short trial into this lengthy, monotonous, repetitive evidentiary hearing, which ends up – you know, which ends up looking a lot more convincing than it really is. So, like, your argument may have intuitive appeal, but isn't this identification process specifically admissible under 115.12 of the statutes and 801d.1? What was inherently wrong with this testimony? Both of those – that rule and that statute make it not inadmissible under the hearsay rule. It says nothing about prior consistent statements. Well, yeah, you're familiar with the recent amendment to the rule, correct? I am. And the recent amendment to the rule clarifies what many of us have believed was always the law, that if a statement is otherwise admissible under a recognized exception to the hearsay rule, it does not violate the prohibition on prior consistent statements. Right. The – what – obviously, before that amendment, that wasn't there. It wasn't there, but it was in the common law. If you go back and you look, for more than 30 years, the Supreme Court, the appellate courts in this state have recognized this principle that if a statement is otherwise admissible under an exception – a recognized exception to the hearsay rule, they do not violate the prohibition on prior consistent statements. Yes, but unless you can find ambiguity in the plain language of the rule, you cannot go beyond the plain language of the rule to interpret it. So I absolutely agree with you that the law is what – the common law is what it is. Well, weren't the rules intended to codify the common law? And in the preamble to the Illinois Rules of Evidence, the committee, which Justice Hudson was on, specifically articulates those areas that were exceptions, and this is not among them. So in other words, it was a codification of the common law, and this just adds clarification to the recent amendment. This being overlooked in here is provisional that in the rules, they were never intended to abrogate existing common law rules of evidence. It may have not been a master of clarity in the actual rule, but it was clear. They were not intended to supersede existing rules. So anyway, we're past that now because they've been amended. Let me get back to your earlier argument before you end. So on the issue of delay, in essence, you're saying that the meter's running from the arrest. It doesn't matter who's in charge of the office. Is that sort of what you're saying? That's correct, yes. Okay. Yes. Because, I mean, it's the defendant's right, and if he's unlucky enough to have a state's attorney's election in the middle of his six-year delay, that shouldn't determine whether or not his speedy trial right was violated. Thank you. You'll have time for a follow-up, Mr. Hamill. Thank you. Mr. London. Good afternoon, Your Honors. Counsel. Mr. London, McDonald is one of the most celebrated cases in the country's history. Why didn't you find it before yesterday or the day before? I wish I had a good answer. I don't. However, again, counsel doesn't object. It's there. This Court could always, you know, refer to it anyway. But let me suggest that regardless of me not finding it previously, the answer is, what does Marion say? And the people completely disagree with the defendant's analysis. Marion does not say. The language is a little, I don't want to necessarily accuse the U.S. Supreme Court, but the language is a little sloppy. It does refer to arrest. It does refer to restraints. However, the same paragraph that counsel cited says, either a formal indictment or information, or else the actual restraints imposed by arrest and holding to answer a criminal charge. It doesn't say by arrest. Arrest cannot, custody cannot trigger a speedy trial analysis. Do you have any cases that say that? Marion itself. McDonald's. And there are, you know, a few other cases that we cite. But yeah, Marion itself says holding to answer. What does holding to answer mean? Holding to answer doesn't mean. I mean, theoretically, maybe it would have been cleaner if on February 6th of 2008, after the defendant was taken into custody, related to the murder or related to the investigation, if they let him out and released him for five minutes or let him step out of the police station and then arrested him on the bond replication. That wasn't realistically going to happen. I don't know of any case that necessarily that does. In light of your argument, does Kulkowski control this situation? No. Kulkowski, again, Kulkowski itself says it's a very particular circumstance. And Kulkowski, despite the fact that it was ultimately dismissed, it was dismissed because they didn't bring him back within, I believe, you know, the 30 days. But in Kulkowski, despite the dismissal, the court found, arguably correctly, that he was in custody in Illinois at all points in time because the Clinton County Sheriff never should have allowed him to go to St. Louis. But arguably, if you look at McDonnell, McDonnell might say that Kulkowski was wrongly decided. That once the case was dismissed, the time between dismissal and re-indictment, if you follow McDonnell, McDonnell would arguably say that that doesn't count. But to the extent that Kulkowski does count, no. Kulkowski is a very particular circumstance with certain specific flaws. And, again, as Justice Burkett mentioned, you know, the court, the Fifth District, had said he was in custody at all times. As Your Honor, Justice Burkett said, you know, there was potentially a flaw with releasing him, and that was under that very specific case. Are you aware of any cases that have this specific tech pattern that you can call our attention to? I'd say that to some extent. Marion itself, Marion was a case where the government had issued some kind of, you know, a complaint against the company. There was a number of years where the company was under suspicion. There was a pretty big passage of time. There is no reason to believe that a lot of additional investigation was done after, you know, the first few months. And the court said that's not sufficient. Levasco. In Levasco, there was an 18-month delay, not quite as long, of course. But, again, the allegations in Levasco were that the, again, everything was investigated, and the government supposedly had all the information within the first month. So, therefore, why did they wait another 17 months? And the appellate court found it was inappropriate. So how do you distinguish this case from those cases? What additional investigation was going on? I'm not saying there was. I'm saying in both of those cases, the courts found that despite the fact that there was an additional, that there was not additional investigation, that there wasn't an improper delay. So I don't know that I distinguish. Justice Burkett has suggested a possibility. But anything I say would be speculative. There was certainly. We really don't know. There's no dispute. We have no knowledge. And, like I said, I mean, we can look at defendants' own post-trial motion. In defendants' post-trial motion, he mentions that the police had complaints about other possible people. Could they have been investigating that? I don't know. I know that that defendant had a landlord, paramour, someone he lived with, that seemed to be doing a lot of investigation, that may have been a person, was identified in the reports as a person of interest. Was there an investigation of her? Again, I don't know because that's not on the record. So, yes, the only thing I can tell you is there is no explanation whatsoever in the record for the quote-unquote delay. As it relates to pre-indictment delay. As it relates to pre-indictment delay. As it relates to that, was there actual and substantial prejudice? Of course not. I mean, when I say of course not, the allegation or the suggestion of what the two girls may have been able to testify to is incredibly vague. There's no affidavit. Again, the people admittedly speculate, but they speculate, we speculated, I speculated, in response to the allegation raised in the opening defense brief that suggested that there was supposedly an offer in the burglary case that was withdrawn and the people that asked for and received the maximum supposedly just related to this case. Well, contrary to the defendant's position, the people believe that if indeed that was something that was at issue at sentencing, the defendant can and should have investigated that at the time and could have raised it as a sentencing issue. Obviously it doesn't go to the merits of the burglary itself, but certainly would have gone to the merits of any possible sentencing. And to the extent that the defendant received a rather harsh sentence, you know, the defense suggests that that was directly related to this. The trial court said in posing that sentence that it was not, that he was sentencing the defendant based upon his history, correct? I don't know. Have you read the Rule 23 order in 1P1? I did not. Okay. I did not. Again, I'm just looking at the evidence in our instant case. So again, assuming for, but the point is, that is something that the defendant could have anticipated and could have asked his attorneys to investigate at the time. We certainly have instances, as this court is well aware, of pro se defendants in PCs that seem to do an incredible amount of investigation on their own or with assistance, and they don't have counsel. Defendant did have an individual, the same person that is, you know, was a person of interest in this case, Diane Chavez, that seemed to do a lot of legwork for him. Potentially she could have. Am I suggesting that that was required? No. But to the extent that they're arguing that there was no way possible, this is not a case where some of the post-indictment cases relate to a defendant doesn't become aware for two or three years because there's an ongoing investigation, and then the defendants say, well, we didn't even learn about it, so how can we relate back and think of what was going on in that day and time? And even in those cases, the court has found that that doesn't establish actual and substantial prejudice. In this case, the defendant certainly was aware on February 6th. Well, Ms. Chavez was actually charged, wasn't she, with obstructing justice? Yes, I believe so. And she appealed. There was a hung jury, and then she appealed. I believe so. So the point is there was more going on, and there was possibility that the defendant could have discovered this information. What actually happened? We have the defendant, and let me just digress for one moment. What we do have in Kilkowski, and I think the benefit is, that there a defendant filed a motion for speedy trial even though there wasn't a pending charge. Yes, he had a case number, but we've seen stranger things by defendants. Could a defendant have tried to push the issue here if he felt he was in jail? Arguably, yes. Am I saying that there was a requirement and but for that? No, of course not. A defendant is not required when he's not charged to file anything. But that's the whole point. He wasn't charged. If we look at an analogy of a bar fight where the police arrive on the scene, and there's multiple people, and five, six, a dozen people are taken into custody, does speedy trial run on all of those individuals if they're not charged? If they're charged and kept in jail for six years without anything else going on, yes, of course it would start running. But does it run because the police are conducting an investigation? The answer is no. Was defendant in custody related to this matter? Yes. Was he arrested? That's a closer question. But even arguably, if he was arrested, and that's what the judge ultimately decided, that even if defendant was arrested, and even if we take his motion as a given, he was from 11 o'clock on February 6th of 2008 until April 14th of 2014, he was in custody solely on the robbery. Does that distinguish it from Kilkoski, too, where there was no second charge pending? Correct. There was no first charge, much less a second charge. But again, that's what McDonnell did. So even if we were to try to utilize Kilkoski, McDonnell said that once the first charge is dismissed, and specifically, and the benefit of McDonnell is it discusses the concerns of Marion and explains a little bit better than Marion, and the concerns of the defendant, the publicity and the potential concerns and the lack of maybe being able to get a job, that doesn't apply, even though, in McDonnell, that was certainly hanging over his head. Even more so because he was specifically charged, released, and then, again, charged again. The court said speedy trial is simply not implicated. Could you address counsel's argument that the evidence in this case was close and that the errors committed by the prosecutor in closing argument, together with the evidentiary errors, should warrant reversal and remand for new trial? The people disagree that the evidence was close. Yes, there were substantial statements, prior consistent statements allowed in, but they were allowed in properly under the rules of evidence. In addition to the rules of evidence in common law, which was raised previously, the people cited two or three cases where the exact issue was raised, and the finding was that identification, both of the individual and of an automobile, is an exception to the rule. Here we had multiple people identify defendants. Did the trial court caution the prosecutors to say, I forget the exact language that the trial court used, but cautioned the prosecutor that it's excessive, that they're repetitive? I think they said, like, be careful, but they didn't sustain objections because they found that it wasn't. And, of course, there's limiting instructions. Is it excessive? The case law says it's allowed. So, I mean, can you have... Obviously it's prejudicial. What do I mean by it's prejudicial? All evidence is prejudicial. If it wasn't prejudicial, it wouldn't be presented. If it wasn't going to benefit the people, they wouldn't have presented it. Was the prejudice outweigh the probative value? No. Was it entered contrary to a rule of evidence or the common law or case law? No. It was all properly entered. And, again, I would disagree that this was not a circumstance where we had a black SUV. And individuals could say, well, you know, there's tens of thousands of black SUVs. There could be dozens, you know, on the street. There was a fairly unique car. The defense attorney, you know, the defense attorney commented that he did look into the possibility of, you know, calling an expert. And we never will know exactly, because the defense attorney didn't explain, but the very possibility is that he looked and saw that only X number of these fairly unique vehicles with the gold wheel package was sold in the area. So if you have two vehicles and one of them just happens to be the person who the people were able to tie to the scene and had a problem with this attorney, I think the evidence was much stronger than the defendant is suggesting. And part of that is the strength of the motive. Definitely. Definitely. And to the extent that, again, the argument is that, well, we don't know what the motive is or other people might have had similar motives, we have sufficient testimony of what the motive was. We also have a very admittedly unique and peculiar circumstance that this wasn't just a murder two days before a defendant was up for sentencing. We also have a circumstance where the day before his prior time up in court, a shot was taken and it was determined to be from, you know, the same caliber, et cetera. Would that in of itself tie a defendant? No. The combination of motive, multiple people putting him at the scene, the unique car, the combination, I believe, is more than sufficient to establish guilt beyond a reasonable doubt. All right. Thank you. Thank you. Mr. Hamill, we'll follow up. Thank you, Your Honor. I'll start with where Mr. Romney left off. I disagree with his analysis of the evidence. The van was not unique. It was a standard color. It was a stock upgrade package. The testimony, and this really, this is something that happens a lot in this case, and the state presents this evidence and exaggerates its importance. So a detective testified that he searched for 1998 Dodge Caravans with a golden upgrade package and found that there were three of those in Winnebago County, or registered in Winnebago County. That doesn't mean anything. The witnesses didn't see a 1998 Dodge Caravan. They saw a bluish-purple minivan with a gold package. They didn't know the year. They didn't know the make. Two of the witnesses called it a town and country. One of them called it a GMC or a Chevy. But many of them identified the picture of the car, the exact car that would have been shot and sold. True, but there are other makes and models and years that could have been that car. And the fact that they point out that car, it's a purple minivan. Well, there were a lot of other evidence, the clothing that was found recovered behind a box, and the motive evidence, the tapes, which I assume that the female speaker is Ms. Chavez trying to talk Mr. Clark into presenting certain evidence that he had a problem with. So there was a lot of other evidence to corroborate the ID, correct? I mean, in terms of motive. You don't look at Pete. We're not the trier of fact. But in terms of looking at your allegation, that this evidence was closely balanced, we look at all of the evidence, not just what you've characterized as weak ID. You look at the other evidence, correct? You don't look at just a single piece of the evidence. But what I'm saying is that the state really is exaggerating the importance of all this evidence, the motive evidence. He wanted Clark to introduce certain pictures at trial. If you look, you know, you read the transcripts, he's not yelling at him, he's not threatening him, he's not trying to fire him. And that's something that the prosecutor argues over and over again in closing arguments. When you have a circumstantial case like this, you have a number of witnesses who have this ID, for lack of a better term, ID testimony of both the man and your client. I mean, doesn't that make it more corroborative than cumulative? I mean, you're arguing that this evidence was cumulative and improper. But when you have this identification over and over again, again, with a circumstantial case like this, isn't it important, at least for the state of America, to prove the case to corroborate some of the evidence? If it's different witnesses, it's corroborative. But if it's the same witness and the same identification, it's cumulative. I mean, it's a different concept if you have three different witnesses who say, that's the guy. If you have one witness who says, that's the guy, that's the guy, that's the guy. And that's what this is. I think another point I'd like to make about this is the state, hypothetically, let's say you hold that this evidence was properly admitted. That doesn't change the strength of this case a bit. There's absolutely no difference in the strength of the state's case if you have this evidence in there or not, because this evidence tells the jury nothing that it didn't already hear on the stand. I'll give a quick example. Take Ingvar Carlsen. Ingvar Carlsen testified he saw a bluish van. He testified that People's No. 4 was a picture of the van that he saw. That's admissible. That's probative. Then he testified, and on the night of the shooting, I went to the police station, saw a van, and said that was the van that I saw. How did that improve anything? Well, when you take that together with other circumstances, for example, the absence of phone activity, the absence of computer activity, remember those reports? The absence of computer activity is one of the things that the state misstated in its closing argument, because actually the Charles Smith computer was modifying files starting at 1254 p.m. So there wasn't actually an absence of computer activity. There was absence of some computer activity, no Internet activity, but... Go ahead. Go ahead, Mr. Hamill. Well, yeah, so all of this evidence, if you take out the exaggerations, you take out the misstatements, and you take out or give proper weight to prior consistent statements that don't add any appropriate value, it's still a very weak case. The opposing counsel raised a hypothetical bar fight. So let's say you have a bar fight, and you have somebody, the police come up, they see the person who was a combatant, they take that person into custody and say, you're under arrest for aggravated battery. They haul him to the station. And then it turns out he's got a warrant for a very serious charge. They never charge him with the aggravated battery. But he goes to jail for a serious charge, he's in jail for a long time, goes to trial. All these things happen. And then later, they charge him with the aggravated battery. That's a constitutional speedy trial violation? Yes. Analysis? Absolutely. I think that's necessary. Even though he was never technically charged or in custody other than for that few minutes that he was in the police car on the way to the station before they ran him? Yeah, I believe it is, because that's exactly the case. I just want to make sure. I think that's actually the case. Because there would be a lot of people out there with constitutional speedy trial issues. Well, only if they're held. Only if they continue to be held for that original charge. But my hypo, he's not being held for the original charge. In my hypo, he's being held for the warrant, and then he goes to jail on the warrant. The charge is never brought. If you're held on one charge, and then another charge comes along and you get held on the second charge, you are then concurrently being held on both charges. And that's, if you look at, like... So if you're never charged and you do life in prison on a murder case, but that aggravated battery was still out there that they never decided to charge, you're in jail your rest of your life on that aggravated battery charge. Well, your speedy trial rights, your aggravated battery prosecution was initiated and your speedy trial record was not. I know you've covered this so many times, but McDonald, which in terms of your language for Marion, McDonald, which is 11 years later, clearly says the speedy trial clause does not apply to the period before a defendant is indicted, arrested, or otherwise officially charged. That's a quote. I mean, arrested is right there. Okay. So your argument is officially charged includes arrest. Yes. The argument is right there in that quote. I mean, it's indicted, comma, or arrested, comma, or officially charged. So I think that supports my interpretation. If you guys have no further questions, I would ask that you reverse the defense situation outright or alternatively you can ask for a new trial or a critical hearing based on the other's records. Thank you, Mr. Hamill. Mr. London, the Court thanks both parties for the quality of your arguments. The case will be taken under advisement and a written decision will be issued in due course. Thank you, gentlemen.